[No. A016023. First Dist., Div. Five. May 15, 1984.]

IVEAL STANCE, Plaintiff and Appellant, v.
GEORGE JACKSON et al., Defendants and Respondents.

**COUNSEL**

Weltin & Van Dam, Philip R. Weltin and Brian E. Kerss for Plaintiff and Appellant.

J. Stewart Harrison, James L. Miller, Jan H. Raymond and Brobeck, Phleger & Harrison for Defendants and Respondents.

---

**OPINION**

**HANING, J.**—Plaintiff and appellant Iveal Stance appeals from a judgment of dismissal following the granting of a motion for summary judgment in favor of defendant and respondent Matson Navigation Company (Matson). ▮▮▮▮ He contends the trial court erred as a matter of law in ruling that section 905(b) of the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. § 901 et seq.; "LHWCA" or "Act") precludes him from recovering under California Vehicle Code section 17154 for injuries he sustained in a collision with a car driven by a fellow longshoreman which was under contract to Matson to be transported by sea. We affirm the judgment.

The following facts are undisputed: Appellant was a security guard employed by Matson Terminals, Inc. (Terminals). He was injured when a company van he was driving collided with a car driven by George Johnson, another Terminals employee, on Terminals property. Johnson was moving the car from a central pickup area to a staging area so it could be shipped aboard Matson's vessel, S.S. *Maunawili*, from Oakland to Honolulu. The car belonged to a Sergeant Watson and was being shipped under a contract between the United States government and Matson.

Terminals is a wholly owned subsidiary of Matson, but the two are separate corporations. By contract between them Terminals performs all stevedoring and terminal services for Matson at the Port of Oakland in connection with transportation of goods by water.

Appellant filed a claim under the Act against Terminals for his injuries. An administrative law judge determined that appellant was covered by the Act and ordered Terminals to provide compensation benefits.[1] Terminals did not appeal this order. Contemporaneous with his claim against Terminals appellant brought this action in state court against Matson for derivative

---

[1]Under the Act an employee is "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations . . . ." (33 U.S.C. § 902(3).) An employee shall be compensated under the Act "if the disability . . . results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading . . . a vessel)." (33 U.S.C. § 903(a).)

liability under California Vehicle Code section 17154 as bailee of Sergeant Watson's car.[2]

The section of the Act on which the trial court based its rulings reads, in pertinent part: "(b) In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person . . . may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title,[3] and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. . . . The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. *The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.*" (33 U.S.C. § 905(b); italics added.) Appellant argues that section 905(b), like other federal maritime laws, would apply if his injury had occurred aboard the ship, but does not apply to an injury sustained on land. Therefore, he contends, a longshoreman injured on land is free to sue the vessel[4] under the particular state's concepts of negligence.

Subdivision (b) was added to section 905 in 1972 as part of a substantial revision of the Act. Prior to 1972 a long line of Supreme Court rulings had imposed upon the vessel owner, under the doctrine of "seaworthiness," what amounted to absolute liability in tort for injuries sustained by a longshoreman engaged in stevedoring operations. The longshoreman recovered judgment despite the fact that often the negligence or dangerous condition causing his injury was actually attributable to the stevedore, and not to the vessel. The vessel was then generally successful in an indemnity action against the stevedore. (*Ryan Co.* v. *Pan-Atlantic Corp.* (1956) 350 U.S. 124 [100 L.Ed. 133, 76 S.Ct. 232]; *Seas Shipping Co.* v. *Sieracki* (1946) 328 U.S. 85 [90 L.Ed. 1099, 66 S.Ct. 872].)

The 1972 amendments struck a balance among the interests of the longshoreman, the stevedore, and the vessel owner. They increased substantially

---

[2]The complaint also named George Johnson as defendant, although it erroneously identified him as George Jackson. The summary judgment was granted to Matson Navigation Company only.

[3]Section 933 reads, in relevant part: "(a) If on account of a disability or death for which compensation is payable under this chapter the person entitled to such compensation determines that some person other than the employer or a person or persons in his employ is liable in damages, he need not elect whether to receive such compensation or recover damages against such third person."

[4]Vessel includes vessel owner. (33 U.S.C. § 902(21).)

the compensation benefits to a longshoreman injured on the job.[5] They shifted the primary responsibility for longshoreman safety from the vessel to the longshoreman's employer, the stevedore, by eliminating the longshoreman's right to recover from the vessel under the unseaworthiness doctrine. They preserved for the longshoreman an action for negligence against the vessel, but they abolished the stevedore's obligation to indemnify the vessel if the vessel was held liable for the longshoreman's injuries. (H.R.Rep. No. 92-1441, 92d Cong., 2d Sess., reprinted in 1972 U. S. Code Cong. & Admin. News, pp. 4698, 4703-4706; *Scindia Steam Navigation Co.* v. *De Los Santos* (1981) 451 U.S. 156, 165 [68 L.Ed.2d 1, 11, 101 S.Ct. 1614].)

Cases since the passage of the 1972 amendments have emphasized repeatedly that a major purpose of the amendments was to relieve the vessel of vicarious liability for the negligence of the stevedore. The United States Supreme Court stated most recently: "Congress intended . . . to terminate [the vessel owner's] automatic, faultless responsibility for conditions caused by the negligence or other defaults of the stevedore." (*Scindia Steam Navigation Co.* v. *De Los Santos, supra,* 451 U.S. at p. 168 [68 L.Ed.2d at p. 13].) Other courts have made similar statements: "[V]icarious liability for injuries caused by the stevedore or its employees is now precluded as a basis of recovery against the shipowner . . . ." (*Anderson* v. *Iceland S.S. Co.* (1st Cir. 1978) 585 F.2d 1142, 1148); "Under the 1972 Amendments, the shipowner is no longer vicariously liable for the negligence of the stevedore company." (*Wescott* v. *Impresas Armadoras, S.A. Panama* (9th Cir. 1977) 564 F.2d 875, 882); "In the six years that have elapsed since Congress amended the Act, the federal courts have abolished any concept of a vessel's strict liability or vicarious liability for the fault of the stevedore company. . . . The ship owner is not liable for the negligence of the stevedore company or its longshoremen . . . ." (*Murphy* v. *National Shipping Corp. of Pakistan* (C.D.Cal. 1978) 459 F.Supp. 1173, 1177-1178.)

The vessel becomes liable to an injured longshoreman only upon a showing that its own independent negligence caused the injuries. (*Scindia Steam Navigation Co.* v. *De Los Santos, supra,* 451 U.S. at p. 168 [68 L.Ed.2d at p. 13]; *Smith* v. *Eastern Seaboard Pile Driving, Inc.* (2d Cir. 1979) 604 F.2d 789, 794; *Gallardo* v. *Westfal-Larsen & Co. A/S* (N.D.Cal. 1977) 435 F.Supp. 484, 490; *Prohoroff* v. *Kawasaki Kisen Kaisha, Ltd.* (1979) 90 Cal.App.3d 640, 648 [153 Cal.Rptr. 287]; *Keith* v. *S.S. Goldstone* (1978) 81 Cal.App.3d 699, 704 [146 Cal.Rptr. 639].) As synthesized in *Smith,*

---

[5]In addition to increasing the amount of benefit an injured longshoreman can receive, the amendments eliminated the ceiling on temporary disability payments, it extended to age 23 the limit to which surviving dependent children of fatally injured workers seeking higher education may receive compensation benefits, and extended coverage to injuries sustained on shoreside areas customarily used in stevedoring activities.

"the employee may maintain an action for damages if the injury results from negligence on the part of the shipowner, but if the negligent party is the stevedore or other intermediate employer, then the longshoreman or harbor worker is entitled only to compensation." (*Smith* v. *Eastern Seaboard Pile Driving, Inc., supra,* 604 F.2d at p. 794.)

■ Vehicle Code section 17154, under which appellant brings his action against Matson, imposes vicarious liability upon bailees of motor vehicles. It states, in pertinent part: "Every bailee of a motor vehicle is liable and responsible for . . . injury to person[s] . . . resulting from a negligent or wrongful act or omission in the operation of the motor vehicle, in the business of the bailee or otherwise, by any person using or operating the same with the permission, express or implied, of the bailee." If this statute were applied in the instant case, Matson would be liable for the negligence (assuming such exists) of Terminals, the stevedore whose employee was permissively driving the car which injured appellant. However, section 905(b) pertains to those persons covered by the Act, and coverage extends to areas adjoining navigable waters customarily used by a stevedore. (See footnote 1, *ante.*) Therefore, Vehicle Code section 17154 conflicts with section 905(b) of the Act, which makes the exclusive remedy of a longshoreman against a vessel dependent upon the independent negligence of the vessel, and eliminates vicarious liability for negligence of the stevedore.

■ Under the supremacy clause of the United States Constitution, a state statute in conflict with federal law must yield to the federal law. (U. S. Const., art. VI, cl. 2; *Free* v. *Bland* (1962) 369 U.S. 663, 666 [8 L.Ed.2d 180, 183, 82 S.Ct. 1089].) The legislative history of the Act and subsequent cases recognize the need for national uniform application. "[T]he Committee does not intend that the negligence remedy authorized in the bill shall be applied differently in different ports depending on the law of the State in which the port may be located. The Committee intends that legal questions which may arise in actions brought under these provisions of the law shall be determined as a matter of Federal law." (H.R.Rep. No. 92-1441, *supra,* at p. 4705.) As *Duty* v. *East Coast Tender Service, Inc.* (4th Cir. 1981) 660 F.2d 933, 938, cert. den., 455 U.S. 945 [71 L.Ed.2d 657, 102 S.Ct. 1442], emphasizes: "The legislative history is unambiguous that it is a uniform federal law, not state law, to which we must turn . . . . In short, the objective has been to avoid a situation in which a plaintiff would have a viable cause of action in Portland, Maine although, under exactly identical factual circumstances, he would be unable to recover in Portland, Oregon because of differences in the laws of the two states." Application of congressional intent is well illustrated in *Birrer* v. *Flota Mercante Grancolombiana* (D.C.Ore. 1974) 386 F.Supp. 1105, 1108. In that case an injured longshoreman sued the vessel for negligence, seeking the benefit and protection

of the Oregon Employer's Liability Act, which imposes a higher standard of care than the common law standard. The federal court denied recovery under the Oregon statute, stating "both general maritime law and § 905(b) require adherence to a uniform standard of care in § 905(b) actions and the higher [Oregon] standard is inapplicable to such actions."

As the following quotations indicate, California courts concur with the federal courts. ▪ "[I]n the area of maritime torts, [the] task [of California courts] has been that of ascertaining and applying the appropriate legal principles derived from the considerable body of federal maritime law that has developed in the United States." (*Baptiste* v. *Superior Court* (1980) 106 Cal.App.3d 87, 94 [164 Cal.Rptr. 789].) "Maritime tort law is inherently federal and should be uniform, applying the same standards regardless of the location where the injury has occurred." (*Prohoroff* v. *Kawasaki Kisen Kaisha, Ltd., supra,* 90 Cal.App.3d at p. 644.) ▪ "[T]he liability of a shipowner to a longshoreman employed by a stevedore is governed by federal law." (*Keith* v. *S.S. Goldstone, supra, .*81 Cal.App.3d at p. 703; see also *Schreefel* v. *Okuly* (1983) 143 Cal.App.3d 818 [192 Cal.Rptr. 402].)

▪ Appellant may recover against Matson only upon a showing that Matson's own negligence caused his injuries. His complaint contains no allegation that Matson breached its standard of care, nor do the declarations supporting or opposing the motion for summary judgment state facts showing any affirmative negligence by Matson. (Code Civ. Proc., § 437c.) Without such a showing, plaintiff has no cause of action and Matson's motion for summary judgment was properly granted. (*Hardy* v. *Hardy* (1943) 23 Cal.2d 244 [143 P.2d 701]; *C.L. Smith Co.* v. *Roger Ducharme, Inc.* (1977) 65 Cal.App.3d 735, 743 [135 Cal.Rptr. 483].)

The judgment is affirmed.

Low, P. J., and King, J., concurred.